1  LAW OFFICES OF STEVEN LOWY, PC
2  Steven R. Lowy (State Bar No. 74724)
     lowy@lowy.law
3  1100 Glendon Avenue, 15th Floor
4  Los Angeles, California 90024
   Telephone: (310) 881-6800
5  Facsimile: (310) 881-6801

6
   EMANUEL LAW FIRM
7  Sacha V. Emanuel (State Bar No. 218705)
     semanuel@emanuel.law
8  1100 Glendon Avenue, 15th Floor
9  Los Angeles, California 90024
   Telephone: (310) 881-6814
10 Facsimile: (310) 881-6801

11
   Attorneys for Plaintiff
12 Lauren Wild

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAUREN WILD,<br>          Plaintiff,<br>v.<br><br>GULLANE, a Brazilian Production Company; FABIANO GULLANE, an individual; CAIO GULLANE, an individual; GABRIEL LACERDA, an individual; LUIZ BOLOGNESI, an individual, NETFLIX INC. a Delaware corporation; NETFLIX STREAMING SERVICES, a Delaware corporation; INSTITUTO AYRTON SENNA, a Brazilian Non-Governmental Organization; SENNA BRANDS, a Brazilian corporation; NEYDE SENNA, an individual; | Case No.:_____<br><br>**COMPLAINT FOR:**<br><br>**1) COPYRIGHT INFRINGEMENT (DIRECT, CONTRIBUTORY, AND VICARIOUS);**<br><br>**2) BREACH OF IMPLIED CONTRACT;**<br><br>**3) UNJUST ENRICHMENT;**<br><br>**4) BREACH OF CONFIDENCE;**<br><br>**5) VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS** |

-1-
COMPLAINT

| | |
|---|---|
| VIVIANNE SENNA, an individual; BIANCA SENNA, an individual; and DOES 1-10<br>　　　　Defendants. | **CODE § 17200 EI. SEQ.**<br><br>**DEMAND FOR JURY TRIAL** |

## NATURE OF ACTION

1. This action arises from Defendants' misappropriation, unauthorized use and exploitation of Mr. Lauren Wild's copyright protected work, ideas, and concepts (collectively the "Material") for an innovative television program entitled "Built For Speed: Senna"; Defendants' breach of confidence obligations on receiving confidential material from Plaintiff; and their misrepresentations and deceptive trade practices relating to all of the above.

2. The intellectual property referred to herein was submitted and presented in confidence to Defendants; was disclosed with the understanding that Defendants would not use Plaintiff's work, ideas, and concepts without Plaintiff's permission and compensation. Notwithstanding, Defendants produced, distributed and exhibited a limited series titled "Senna" that used substantial portions of the Material including, but not limited to, fictitious characters and events.

3. Netflix Inc. and Gullane produced the infringing work, and Netflix Streaming Service provided access to the work, without permission from Mr. Wild, and, upon information and belief, without performing any meaningful copyright search and certainly without sufficient due diligence that would have more likely than not revealed Mr. Wild's authorship of the work which had been registered with the US Copyright Office and the Writers' Guild of America along with the release of an audiobook prior to production of "Senna."

4. Defendants' (including those Defendants named as Defendant Does) misappropriated Plaintiff's Material, and fraudulently misrepresented it as owned and exclusively and independently created by Defendants. In so doing, Defendants

have caused significant harm to Plaintiff, and Defendants have been unjustly enriched.

## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a) and (b), and 15 U.S.C. §1121.

6. This Court has personal jurisdiction over Defendants because, Plaintiff is informed and believes and based thereon alleges that: (i) Defendants are doing business in this district, and/or (ii) a substantial part of the wrongful acts committed by Defendants have occurred in interstate commerce in this district.

7. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(a).

## THE PARTIES

8. Plaintiff Lauren Wild is an individual and an author who resides in Palm Springs, California. Plaintiff is the author and claimant and owns the United States copyrights of the dramatic works based on the life of racing driver Ayrton Senna, Built For Speed: SENNA" and "Built For Speed: SENNA" 2-7; Built For Speed: SENNA 8-11; and Built For Speed: SENNA Story Arc

9. Plaintiff is informed and believes and on that basis alleges that Defendant Netflix Inc. is a Delaware corporation operating as a media company with a principal place of business located at 5808 Sunset Blvd., 11TH Floor Los Angeles, CA 90028.

10. Plaintiff is informed and believes and on that basis alleges that Defendant Netflix Streaming Services Inc. is a Delaware corporation operating as a streaming service with a principal place of business located at 121 Albright Way Los Gatos, CA 95032

11. Plaintiff is informed and believes and on that basis alleges that Defendant Gullane Entertainment Company is a Brazilian production company

1  whose US corporate office is located at 1351 Third Promenade Ste. 200 Santa
2  Monica, 90401.  Plaintiff is informed and believes and on that basis alleges that
3  Defendant is in the business of film and television production.
4        12.    Defendant Fabiano is an individual, resident of Brazil, and the founder
5  of the television production company, Gullane, and was a producer of the television
6  limited series at issue here, "Senna".
7        13.    Caio Gullane is an individual, resident of Brazil, and a founder of the
8  television production company, Gullane, and was a producer of the television
9  limited series at issue here, "Senna".
10       14.    Gabriel Lacerda is an individual, resident of Brazil, and an executive
11 producer of the allegedly infringing television limited series at issue here, "Senna".
12       15.    Luiz Bolognesi is an individual, resident of Brazil, and credited as the
13 creator of the allegedly infringing television limited series at issue here, "Senna".
14       16.    Plaintiff is informed and believes and on that basis alleges that Bianca
15 Senna is an individual, resident of Brazil, and the niece of Ayrton Senna, the
16 subject of the television limited series "Senna".
17       17.    Plaintiff is ignorant of the true names and capacities of Defendants
18 sued hereunder as Does 1 through 10 inclusive, and therefore sues these Defendants
19 by such fictitious names. Plaintiff is informed and believes and thereon alleges that
20 each of the fictitiously named Defendants is responsible in some manner for the
21 occurrences herein alleged, and that Plaintiff's damages as herein alleged were
22 proximately caused by their conduct. Plaintiff will amend this complaint to allege
23 the true names and capacities of defendants DOES 1 through 10 when ascertained.
24 These fictitiously named Defendants, and each of them are, and at times mentioned
25 were, acting in concert with Defendants, and the parties DOES 1 through 10
26 inclusive are sued herein individually and joined as Defendants in this action.
27
28

18. Defendants at all times herein mentioned were agents of one another as codefendants, and in performing the acts and/or omissions hereinafter alleged were acting within the course and scope of such agency and the permission and consent of each codefendant, individually and collectively. The allegations of this Complaint are stated on information and belief and are likely to have further evidentiary support after a reasonable opportunity for further investigation and/or discovery.

19. At all material times hereto Defendants, and each of them, was the alter ego of each other, or were in a principal and agency relationship and/or business partnership, and as such were acting with the implied, or ostensible authority of each other. On that basis, Plaintiff alleges that each of Defendants is the alter ego of each other in that each Defendant is but an instrumentality or conduit of one or more of the other in the pursuit of a single business venture such that disregard of the separate nature of Defendants' corporate organization, or other association, is necessary to prevent an injustice upon Plaintiff. In this regard, Plaintiff is informed and believes, and based thereon alleges, that each of Defendants has common agents and at the time this matter arose, were using the financial resources of other Defendants and each of Defendants tend to benefit jointly, both financially and professionally, from transactions entered into by one or more of the other Defendants.

## **BACKGROUND AND GENERAL AVERMENTS**

20. Plaintiff is a professional writer and author who owns and controls all right, title and interest in the dramatic works he created based on the life of racing driver Ayrton Senna, Built For Speed: SENNA" and "Built For Speed: SENNA" 2-7; Built For Speed: SENNA 8-11; and Built For Speed: SENNA Story Arc. Plaintiff holds US Copyright Registration Number TXu 2-219-400, dated 9-4-20,

and US Copyright Registration Number TXu 2-220-507, dated 9-4-20 in these works.

21. Plaintiff does not own Aryton Senna's life rights and/or right to publicity, and makes no claim to the same. At no time during Plaintiff's business relationship, collaboration and/or engagement by Defendants did any of them, individually or collectively, make any claim—or any mention whatsoever—of libel, false light and/or invasion of privacy with respect to any of Plaintiff's Material and oral disclosures.

22. In or around 2013, Plaintiff attended a meeting with executives at Sony Pictures, T. Paul Miller, Peter Nelson and one of their colleagues with respect to an unrelated feature film. During the meeting, the parties discussed another project on which Plaintiff was working, a feature film about Ayrton Senna. Peter Nelson told Plaintiff that he was a Senna fan and expressed interest about the project.

23. Plaintiff then disclosed certain details of his independent research of Senna's life, of which none of the recipients had prior knowledge. Plaintiff, over the course of several years, had done extensive research on Senna, conducted interviews of those close to him, and obtained information that was known only, if at all, by members of Senna's inner circle, but not necessarily his family—some of whom where minor children during his career and others who were not present and/or privy to his private and social life.

24. By 2016, Mr. Miller had changed employers and was working at Warner Brothers ("Warner"). Mr. Miller introduced Plaintiff to Andrew Lazar (producer of American Sniper) and Amy Heller, who were (or had been) in talks with production company Gullane regarding an Ayrton Senna feature film that Gullane wanted to make. According to Mr. Lazar and Ms. Heller, Gullane's scripts and material were poorly written and unacceptable to them.

25. Mr. Miller thus advised Mr. Lazar and Ms. Heller that Mr. Wild had been working on a Senna feature film based on a short treatment (the "Treatment") and encouraged them to take a look at Mr. Wild's work. Mr. Wild then corresponded with Warner executives over the course of the next couple months about the Treatment and Senna feature film.

26. The Warner executives sent Mr. Wild's Treatment, and other intellectual property, to Gabriel Lacerda, a producer at Gullane, who in turn sent the materials to the Senna family.

27. In or around January 2017, just after the Sennas read the Treatment, Mr. Lacerda reported to Mr. Wild that the Sennas loved Mr. Wild's Treatment, saying it truly captured "the essence of their boy", and they were very excited.

28. Around this time, Ms. Heller suggested to Mr. Wild that due to the voluminous content he had prepared, he should instead write a limited television series as opposed to a feature film. Although there was no formal agreement in place with Warner or Gullane, thereafter, Mr. Wild began writing series episodes, and finished Episodes 1 and 2 in or around March 2017.

29. During the years 2016 – 2018, Mr. Wild wrote 11 episodes for a limited series titled "Built For Speed: Senna", consisting of approximately 585 pages (the "Limited Series"). Mr. Wild also wrote a story arc, consisting of approximately 12 pages (the 'Story Arc").

30. At Mr. Lacerda's request on November 6, 2017, Mr. Wild wrote an email directly to Mr. Lacerda and sent him Episodes 1 – 3.

31. On November 20, 2017, Mr. Lacerda replied to Mr. Wild confirming receipt of Episodes 1 – 3 and stating that the parties should formalize a partnership.

32. The correspondence between Messrs. Lacerda and Wild continued throughout December 2017, with Mr. Lacerda stating his enthusiasm to (A)

collaborate on the feature film and Plaintiff's Limited Series, and (B) formalize their partnership.

33. At Mr. Lacerda's request Mr. Wild then sent Episodes 4 – 6 to Mr. Lacerda later in December 2017.

34. Mr. Wild delivered the same to the Sennas while engaging in, what the circumstances indicated were, good faith negotiations to formalize a partnership not only with respect to his Limited Series, but also Gullane's feature film.

35. On June 13, 2018 at 9:00 am, Mr. Wild met with Bianca Senna in person at the defunct restaurant, The Farm, in Beverly Hills for several hours discussing the Senna project, and possibly collaborating with Assif Kapadia, the director of the Senna documentary with whom Bianca Sena had recently spoken, and who had expressed enthusiasm about directing episodes of Mr. Wild's Limited Series.

36. Bianca Senna requested Mr. Wild deliver to her the remaining Limited Series episodes, and told Mr. Wild that it was time to bring him down to Brazil. Several hours after their morning meeting on June 13, 2018, Mr. Wild sent Bianca Senna all 11 Episodes via email.

37. On July 12, 2018, Fabiano Gullane emailed Mr. Wild (A) offering him a job to co-write it's Senna feature film with screenwriter/filmmaker Luiz Bolognesi, (B) proposing Mr. Bolognesi serve as showrunner of Mr. Wild's Limited Series, (C) offering to fly Mr. Wild to Brazil on a regular basis to work together on both projects for 1 – 3 weeks at a time; (D) proposing Gullane negotiate Mr. Wild's fees prior to securing financing; (E) advising Mr. Wild of Gullane's current relationship status with Netflix, Amazon, Turner and Fox; and (E) soliciting Mr. Wild's feedback on all of the aforementioned.

38. On July 17, 2018, Mr. Lacerda sent all 11 Episodes to Gullane. Several weeks later, Gullane and the Sennas began requesting the Story Arc that Mr. Wild was still writing.

39. By July of 2018, Mr. Wild delivered the Story Arc to Gullane and the Sennas, who already had Mr. Wild's scripts for 11 episodes of the Limited Series.

40. In Late July of 2018, Mr. Wild retained counsel to negotiate his agreement with Gullane and referred Gullane to counsel, Joshua M. Fine, Esq. Gullane emailed Mr. Fine on July 25, 2018 to advise that it would send a "suggested proposal and conditions so we can advance with Lauren [Wild] as our creative partner for SENNA." This negotiation continued for 8 ½ months with multiple redlined drafts of a Letter of Intent ("LOI").

41. Gullane continued to promise Plaintiff that the parties would continue to work together with Plaintiff co-writing its Feature Film and Defendants' securing financing and distribution for Plaintiff's Limited Series.

42. At the time Gullane advised Plaintiff that it was in contact with Netflix, Amazon, Turner, Fox and TV Globo, it also stated: "Our goal is to be able to count with everything that you already researched and wrote, on top of your active participation in the writer's room for both the series and the movie."

43. On or around April 3, 2019, however, Gullane abruptly terminated communications with Plaintiff, disclosing to him for the first time, after two (2) years of correspondence and sharing intellectual property, that it had been secretly working on a separate and independent limited series, and needed to focus its resources on the same to the exclusion of his Limited Series.

44. In or around November, 2024, Netflix released a 6-part limited series about Senna (the "Infringing Work"). The Infringing Work is substantially similar to Plaintiff's Limited Series and Story Arc in numerous respects, and uses fictitious characters and events invented by Plaintiff.

Plaintiff is informed and believes and based thereon alleges that Netflix did little to no due diligence before greenlighting the Infringing Work, as it was readily discoverable that Plaintiff had registered the Limited Series and Story Arc with the United States Copyright Office in 2018. (Registration Number TXu 2-219-400 and Number TXu 2-220-507) and had released an audiobook.

45. In or around July 2025, Plaintiff became aware of the Infringing Work and its substantial similarities to Plaintiff's Limited Series and Story Arc.

46. Although Plaintiff made pre-litigation attempts to resolve the dispute, both prior to release of the Infringing Work and subsequent, such attempts were unsuccessful.

## FIRST CLAIM FOR RELIEF
## FOR COPYRIGHT INFRINGEMENT, DIRECT, CONTRIBUTORY, AND VICARIOUS

47. Plaintiff realleges and incorporates by reference the allegations contained in each paragraph above.

48. Plaintiff is, and at all relevant times has been, the copyright owner of the exclusive rights under Section 106 of the Copyright Act in the Copyrighted dramatic works based on the life of racing driver Ayrton Senna, Built For Speed: SENNA" and "Built For Speed: SENNA" 2-7; Built For Speed: SENNA 8-11; and Built For Speed: SENNA Story Arc ("Plaintiff's Works").

49. Despite the fact that plaintiff had put Netflix on notice of this claims on October 4, 2024, the Infringing Work that made its debut performance in November 2024 is directly based on these dramatic works.

50. Plaintiff's Works have been registered with U.S. Copyright Office in compliance with United States copyright laws and issued Certificates of Registration by the Writer's Guild of America.

51. Plaintiff has reserved all rights in his Work under United States copyright laws.

52. Defendants, collectively and/or individually, are engaging, and have engaged, in the unauthorized use and violation of Plaintiffs' exclusive rights in Plaintiff's Works including unauthorized publication, production, sale, exploitation, and distribution, of the Infringing Work, and the unauthorized distribution, publication, reproduction, and preparation of other products derived from Plaintiff's Works.

53. In part, Defendants' unauthorized use of Plaintiff's Works includes the production of the Infringing Work, and the distribution, and dissemination of portions of Plaintiff's Works through advertisement, media sales, and ancillary merchandising and marketing as well as dissemination of Plaintiff's Works through the Internet.

54. Plaintiff is informed and believes that Defendants collectively, and/or individually, without permission, or consent of Plaintiff, have used, and despite having received a second notice of Plaintiff's claims on June 2, 2025, continue to use Plaintiff's Works to produce and advertise the Infringing Work. In doing so, Defendants have violated Plaintiff's exclusive copyrights including reproduction, publication, and distribution.  Defendants' actions, together and/or individually, constitute infringement of Plaintiff's copyrights and exclusive rights under copyright laws.

55. Plaintiff is informed and believes that Defendants, collectively, or each of them, have unlawfully reproduced Plaintiff's Works and/or created derivative works based on Plaintiff's Works without the permission of Plaintiff, and unlawfully distributed, and published Plaintiff's Works in violation of Plaintiff's copyright ownership rights.

56. Plaintiff is informed and believes and on that basis alleges that, at the time Defendants committed the alleged infringing acts, Defendants knew of Plaintiff's existence and recognized that Plaintiff owned exclusive rights in Plaintiff's Works.

57. Defendants' acts of infringement are therefore willful, in disregard of, and with indifference to Plaintiff's rights under copyright laws.

58. Defendants' conduct also constitutes contributory and vicarious copyright infringement of Plaintiff's copyrights.

59. Defendants have engaged in and continue to engage in the business of knowingly and systematically inducing, causing, and/or materially contributing to the violation of Plaintiffs' exclusive copyrights. The acts of infringement by Defendants have been willful, intentional, and purposeful, in reckless disregard of, and indifference to the rights of Plaintiff.

60. The Netflix Defendants have had, and continue to have, the right and ability to supervise and/or control the infringing conduct of the other Defendants but have failed and refused to exercise such supervision and/or control. As a direct and proximate result of such failure and refusal, the Netflix Defendants and its advertisers, agents, and assigns, and contracting parties have infringed Plaintiff's copyright in Plaintiff's Works, and the Netflix Defendants have derived a direct financial benefit from the infringements.

61. The acts of infringement by Defendants have been willful, intentional, and purposeful, in reckless disregard of, and with indifference to, the rights of Plaintiff.

62. Defendants' conduct is causing, and unless enjoined and restrained by this Court, will continue to cause, Plaintiff certain great and irreparable injury that may not be able to fully be compensated in money; and for those damages, Plaintiff may have no adequate remedy at law. In connection with conduct of Defendants

-12-
COMPLAINT

causing specific damages to Plaintiffs for which there is no adequate remedy at law, Plaintiffs are entitled to injunctive relief prohibiting further infringements of Plaintiff's rights pursuant to 17 U.S.C. § 502.

63. As a direct and proximate result of the infringement by Defendants of Plaintiff's exclusive rights, Plaintiff is entitled to actual damages, and Defendants' profits pursuant to 17 U.S.C. § 504(b).

64. Alternatively, Plaintiffs are entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c), with respect to each work infringed, or such of the amounts as may be proper under 17 U.S.C. § 504(c).

65. Plaintiffs are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

## SECOND CLAIM FOR RELIEF
## BREACH OF IMPLIED CONTRACT

66. Plaintiff incorporates herein by this reference each and every allegation contained in each paragraph above.

67. As alleged above, Plaintiff communicated their ideas and creative concepts for the "Senna" concept to Defendants, pursuant to the standard custom and practice in the industry with respect to the exchange of creative ideas, under the following terms:

   a. that Plaintiff's disclosure of his ideas and concepts was strictly confidential;

   b. that Defendants would not disclose, divulge or exploit Plaintiff's ideas and concepts without compensation and without obtaining the Plaintiff's consent; and

   c. that, by accepting Plaintiff's disclosure of its concept, Defendants accepted and agreed to abide by the foregoing terms.

68. Plaintiff presented his ideas for the "Senna" concept to the

Defendants in confidence, pursuant to the custom and practice of the entertainment industry, for the express purpose of offering to partner with Defendants in the production, broadcast and distribution of Plaintiff's ideas and concepts. Accordingly, Plaintiff justifiably expected to receive fees, a share of any profits and credit that might be derived from the exploitation of his ideas and concepts.

69. Defendants breached their implied agreement not to disclose, divulge or exploit Plaintiff's ideas and concepts without the express consent of Plaintiff, and to share with Plaintiff the profits and credit for their ideas and concepts.

70. Plaintiff is informed and believes that unless Defendants are enjoined by this Court, Defendants will continue their course of conduct and continue wrongfully to use, televise, exhibit, sell, display, advertise, reproduce and otherwise profit from Plaintiff's ideas and concepts for the concepts and works derived from them. As a direct and proximate result of Defendants' acts, Plaintiff has already suffered irreparable damage and has sustained lost profits. Plaintiff has no adequate remedy at law to redress all of the injuries that Defendants have caused and intend to cause by their conduct. Plaintiff will continue to suffer irreparable damage and sustain lost profits until Defendants' actions are enjoined by the Court.

71. Plaintiff is entitled to a permanent injunction restraining the Defendants and their officers, agents and employees, and all persons acting in concert with them, from engaging in any further acts in violation of Plaintiff's rights.

72. As a direct and proximate result of the material breaches by Defendants, Plaintiff has suffered and will continue to suffer actual damages in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF
### UNJUST ENRICHMENT

73. Plaintiff incorporates herein by this reference each and every

allegation contained in each paragraph above.

74. As set forth above, Plaintiff is informed and believes, and on that basis alleges, that their ideas and concepts contributed substantially to the success of the Infringing Work as produced and broadcast by Defendants. Further, that Plaintiff's ideas and concepts have a reasonable and market value, which will be established according to proof at trial.

75. Defendants are aware of the true origin of the format being used in the Infringing Work, and that Plaintiff is the source thereof; and the Defendants have knowingly accepted and exploited the benefit of those contributions.

76. To date. Plaintiff has not been compensated for the reasonable and market value of their ideas and creative concepts as exploited by Defendants in the Infringing Work.

77. Based on the foregoing, Defendants have been unjustly enriched by their past and continued broadcast and distribution of the Infringing Work, in light of Defendants' failure to compensate Plaintiff for the reasonable and market value of their ideas and creative concepts. The amount of such unjust enrichment will be established by proof at trial.

## FOURTH CLAIM FOR RELIEF
## BREACH OF CONFIDENCE

78. Plaintiff incorporates herein by this reference each and every allegation contained in each paragraph above.

79. As alleged above, Plaintiff communicated his novel ideas and creative concepts to Defendants pursuant to the standard custom and practice of the entertainment industry, under the following terms:

    a. that Plaintiff's disclosure of their ideas and concepts were strictly confidential;

    b. that Defendants would not disclose, divulge or exploit the Plaintiff's

      ideas and concepts without compensation and without obtaining Plaintiff's consent;

      c. and that, by accepting Plaintiff's disclosure of their concept, Defendants accepted and agreed to abide by the foregoing terms.

80. By taking Plaintiff's novel ideas and concepts, exploiting those ideas and concepts, and profiting therefrom to Plaintiff's exclusion, the Defendants breached their confidential relationship with Plaintiff.

81. Plaintiff is informed and believes that, unless Defendants are enjoined by this Court, Defendants will continue their course of conduct and continue wrongfully to use, exhibit, sell, display, advertise, reproduce ad otherwise profit from Plaintiff's ideas and concepts and works derived from them. As direct and proximate result of Defendants acts, Plaintiff has already suffered irreparable damage and has sustained lost profits. Plaintiff has no adequate remedy at law to redress all of the injuries that Defendants have caused and intend to cause by their conduct. Plaintiff will continue to suffer irreparable damage and sustain lost profits until Defendants' actions are enjoined by the Court.

82. Plaintiff is entitled to a permanent injunction restraining Defendants and Defendants' officers, agents and employees, and all persons acting in concert with them, from engaging in any further acts in violation of Plaintiff's rights.

83. As a direct and proximate result of the material breaches by Defendants, Plaintiff has suffered and will continue to suffer actual damages in an amount to be proven at trial.

84. In addition, Defendants' conduct, as set forth above and incorporated herein by reference, was undertaken with the intent to injure Plaintiff and with willful and conscious disregard of Plaintiff's rights, and constitutes clear and convincing evidence of despicable, oppressive and malicious conduct. Plaintiff is

entitled to punitive and exemplary damages against Defendants for the sake of example and to punish Defendants for their unlawful conduct.

## FIFTH CLAIM FOR RELIEF
## FOR UNFAIR COMPETITION UNDER CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17200

85. Plaintiff incorporates herein by this reference each and every allegation contained in each paragraph above.

86. As alleged herein, Defendants, and each of them, willfully attempted to deceive and/or deceived the general public, by their intentional misrepresentation of the source of the Infringing Work, have engaged in unfair, fraudulent, and deceptive business practices as prohibited by California Business & Professions Code § 17200 et. seq.

87. Accordingly, Defendants, and each of them, have violated and continue to violate California Business & Professions Code § 17200 et. seq. proscription against engaging in unlawful, unfair, and deceptive business practices and are liable for restitution and penalties for their conduct, and for damages suffered by individuals and the general public. Defendants, and each of them, must be enjoined from further engaging in these practices, as more fully set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1. That Defendants, and each of them, and their officers, agents, servants employees, representatives, successors, and assigns, and all persons in active concert or participation with them, be enjoined from:

   a. unauthorized uses, including: copying, reproducing, distributing, or publicly displaying Plaintiffs' copyrighted works;

   b. and inducing, causing, materially contributing to, and profiting from the

foregoing acts committed by others.

2. That Defendants be ordered to destroy all materials of every nature any kind, in their possession, custody or control, that infringe the copyrights of Plaintiff.

3. For restitution in the amount of the benefit to Defendants by reason of their unlawful conduct.

4. For actual damages sustained by Plaintiffs.

5. For an accounting under supervision of this Court of all profits, income receipts, or other benefits derived by Defendants as a result of their unlawful conduct.

6. For statutory damages under the Copyright Act.

7. For punitive damages.

8. For attorneys' fees;

9. For Plaintiffs' full costs.

10. For prejudgment interest;

11. For such other and further relief as the Court may deem just and proper.

DATED: October 10, 2025

                                      LAW OFFICES OF STEVEN R. LOWY

                                      By: _____/s/_____
                                           Steven R. Lowy
                                           Attorneys for Plaintiff Lauren Wild

# **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all issues triable of right by jury.

DATED: October 10, 2025

                                    LAW OFFICES OF STEVEN R. LOWY

By:   /s/
Steven R. Lowy
Attorneys Lauren Wild